E-FILED
Thursday, 25 February, 2021  05:13:42 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ANDREW WHITE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:19-cv-03181-SEM-TSH |
| | ) | |
| JOSEPH FELCHNER and ELLEN | ) | |
| SWEENEY | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SWEENEY'S MOTION FOR SUMMARY JUDGMENT**

Defendant, Ellen Sweeney, by and through her attorney, Kwame Raoul, Attorney General

of the State of Illinois, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files this

Memorandum of Law in Support of her Motion for Summary Judgment, stating as follows:

**INTRODUCTION**

Plaintiff Andrew White, *pro se*, filed suit against former Secretary of State Investigator

Ellen Sweeney and police officer Joseph Felchner of the Rochester Police Department, taking issue

with an arrest on August 10, 2018. On August 10, 2018, Plaintiff was arrested by Co-Defendant

Felchner during a traffic stop, because the vehicle he was driving, a red 1995 Mercury Grand

Marquis ("Mercury"), was entered into the Law Enforcement Data System ("LEADS") as stolen

by Investigator Sweeney.

Plaintiff's claims should be dismissed because Investigator Sweeney had probable cause

to initiate an arrest against Plaintiff based upon the arrest warrant issued by the Sangamon County

State's Attorney and the totality of the circumstances known to her when the Mercury was entered

into LEADS as stolen. Additionally, qualified immunity bars Plaintiff's claims.

## UNDISPUTED MATERIAL FACTS[1]

1. On July 25, 2018, Christine Lofton ("Lofton") filed an official complaint with the Illinois Secretary of State Police alleging that Plaintiff stole her vehicle, a red 1995 Mercury Grand Marquis, on July 19, 2018. Ex. 1, Complaint of Christine Lofton.

2. Lofton called the Illinois Secretary of State and reported that Plaintiff filled out an application for the title to her vehicle. Lofton did not receive the title by mail and thought Plaintiff may have taken the title out of the mailbox when the application was filled out. Ex. 1.

3. On August 1, 2018, Lofton received notice that an investigation was opened, and that the matter was assigned to Investigator Ellen Sweeney. The matter was assigned case number 201808127. Ex. 2, Correspondence dated August 1, 2018.

4. On August 2, 2018, Investigator Sweeney spoke with Lofton and requested paperwork to demonstrate ownership of the vehicle. Lofton presented Sweeney with the receipt of the purchased vehicle. Lofton also gave Sweeney a copy of the Springfield Police report for the stolen vehicle. Ex. 3 at ¶ 3, Affidavit of Ellen Sweeney; Ex. 4, Report for Case No. 201808127, at 5.

5. Lofton submitted her title application for the Mercury on June 5, 2018, the same day she purchased the vehicle. The title was only in Lofton's name. Ex. 4, at 5.

6. Plaintiff submitted a title application for the Mercury on July 10, 2018. Ex. 4, at 5.

7. Investigator Sweeney examined Lofton's title application and title, and the title Plaintiff submitted which allegedly contained Lofton's signature. Based on sixteen years of

---

[1] These facts are undisputed only for the purposes of summary judgment.

experience, Investigator Sweeney believed Lofton's signature to be forged on the title application Plaintiff submitted. Ex. 4, at 5.

8.  On August 2, 2018, the Mercury's title was ordered revoked. The request was signed and ordered by Investigator Sweeney and Investigator Sweeney's supervisor. Ex. 3, ¶ 2; Ex. 5, Title Revocation Request.

9.  The license plates of the Mercury were also ordered revoked. Ex. 3, ¶ 2; Ex. 6, Vehicle License Plate Revocation Request.

10. On August 3, 2018, Investigator Sweeney went to Plaintiff's address in Chatham and spoke with Plaintiff's mother. Plaintiff's mother indicated that Plaintiff did not reside at the address. Ex. 3, ¶ 6; Ex. 4, at 5.

11. Ten minutes later, the Plaintiff contacted Investigator Sweeney by telephone. Investigator Sweeney told Plaintiff that there was a discrepancy regarding ownership of the Mercury and that she needed to see his ownership documents. Specifically, Investigator Sweeney requested that he show her documents that he purchased the vehicle and whom he purchased the vehicle from. Plaintiff disagreed that he need to comply with Investigator Sweeney's request for purchase documents. Ex. 3, ¶ 7; Ex. 4 at 5.

12. Plaintiff indicated that he had registration for the vehicle, but never received the title. Ex. 7 at 24-26, Deposition of Andrew White.

13. Plaintiff initially agreed to meet Investigator Sweeney on August 4th at the Chatham Police station at 10:00 a.m. to discuss the situation. Ex. 3, ¶ 7; Ex. 4 at 5.

14. Investigator Sweeney received a call back from Plaintiff about an hour later. Plaintiff indicated that he knew there was a warrant out for his arrest and that he would not be

meeting with her. Investigator Sweeney indicated that if he refused to meet with her, she would enter the vehicle in LEADS as stolen. Ex. 3, at ¶ 8; Ex. 4 at 6; Ex. 7 at 24-25.

15. Based on a totality of the circumstances, including Plaintiff's refusal to demonstrate ownership of the vehicle, Investigator Sweeney entered the vehicle in LEADS as stolen. Ex. 3, ¶ 9.

16. After learning from Plaintiff that there was an active warrant for his arrest, Investigator Sweeney ran Plaintiff's information in LEADS, which indicated that there was an active warrant from the Sangamon County State's Attorney Office for theft of the Mercury.  Ex. 3, ¶ 10; Ex. 4 at 6.

17. Investigator Sweeney spoke with the Cass County Sheriff's office to see if a deputy or Beardstown police office would check the JBS parking lot for the vehicle, as Plaintiff indicated he worked at that location. Beardstown police checked the JBS parking lots and could not locate the vehicle. Investigator Sweeney was told by the Beardstown police that the Plaintiff had been fired and had not been in the facility since July 27, 2018. Ex. 3, ¶ 11; Ex. 4, at 6.

18. Investigator Sweeney received another phone call from Plaintiff on August 6, 2018. Plaintiff told her that he had a contact at the State's Attorney's Office and the warrant for him was quashed. Investigator Sweeney asked again whether Plaintiff would be willing to meet to provide ownership documents for the vehicle. Plaintiff indicated that he had the title for the vehicle and that was all he needed, however, the Illinois Secretary of State never issued him a title. Ex. 3, ¶ 12; Ex. 4, at 6.

19. Investigator Sweeney informed Plaintiff that she was aware that Plaintiff was no longer working at JBS, and Plaintiff became agitated. Ex. 3, ¶ 13; Ex. 4, at 6.

20. Investigator Sweeney then instructed Plaintiff to meet with her so the vehicle would not be considered stolen. Plaintiff began yelling and using profanity. Investigator Sweeney ended the call. Ex. 3, ¶ 14; Ex. 4, at 6.

21. On August 10, 2018, Investigator Sweeney received a phone call from Lofton. Investigator Sweeney indicated to Lofton that the vehicle was entered into LEADS as stolen and that the Plaintiff refused to provide ownership documents for the same. Ex. 3, ¶ 15; Ex. 4, at 6.

22. On August 10, 2018, Officer Felchner initiated a traffic stop on Plaintiff who was driving the red 1995 Mercury Grand Marquis. Ex. 8, Supplemental Report of Officer Joseph Felchner; Doc. 33 at 2.

23. Around 3:30 p.m. on August 10, 2018, Investigator Sweeney heard Rochester Police SG742 run Plaintiff's license plate through the Sangamon County dispatch. Sangamon County dispatch advised Officer Felchner that the vehicle was stolen. Ex. 3, ¶ 16; Ex. 4, at 6-7.

24. Investigator Sweeney confirmed to dispatch that the Plaintiff was aware that the vehicle was stolen and that Plaintiff and Investigator Sweeney had been in contact. Ex. 3, ¶ 17, at 6-7.

25. The Plaintiff received the following citations: 625 ILCS 5/4-103, possession of a stolen vehicle, 625 ILCS 5/3-702 driving with revoked registration; 625 ILCS 5/3-706, failure to surrender revoked registration, and 625 ILCS 5/3-101, operating vehicle with revoked title. Ex 8.

26. On August 20, 2018, Plaintiff was mailed the order of revocation notifying him that the license plate for the Mercury had been revoked. Ex. 9, Order of Revocation.

## STANDARD OF REVIEW

Summary judgment is proper if the pleadings, answers to interrogatories, depositions, and admissions, along with affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether there are any genuine issues of material fact, the court must draw all inferences in the light most favorable to the non-movant. *Dix v. Edelman Fin. Serv., LLC*, 978 F.3d 507, 512 (7th Cir. 2020).

To defeat a motion for summary judgment, a plaintiff must show concrete evidence documenting a genuine issue of fact which is material in the sense that it is outcome determinative. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2007).  A plaintiff must show, not only that there is a factual dispute, but also that there is sufficient evidence to enable a jury to render a verdict in plaintiff's favor. *Anderson*, 477 U.S. at 249. "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors . . . ." *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994). A defendant moving for summary judgment on the grounds that a plaintiff cannot prove an essential element of the case that the plaintiff must prove at trial, has no burden to support his motion with affidavits or other evidence negating the plaintiff's claim. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168–70 (7th Cir. 2013). Instead, a defendant may simply point out to the court the absence of evidence to support the claim that the plaintiff bears the burden of proving at trial. *Id.* at 1168.

## ARGUMENT

Investigator Sweeney had probable cause to initiate an arrest against Plaintiff based upon the totality of the circumstances known to her at the time. Therefore, Plaintiff's claims of unlawful seizure in violation of his Fourth Amendment rights fails. Further, qualified immunity bars Plaintiff's claims.

## I.  DEFENDANT SWEENEY HAD PROBABLE CAUSE TO INITIATE THE ARREST OF PLAINTIFF

As a matter of law, Defendant Sweeney had probable cause to initiate the arrest of Plaintiff, therefore, summary judgment in favor of Defendant Sweeney is warranted. The Fourth Amendment to the Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Probable cause to arrest is an absolute defense to any § 1983 claim for false arrest or false imprisonment. *Abbott v. Sangamon County, Illinois*, 705 F.3d 706, 713 (7th Cir. 2013). Probable cause to arrest exists if the totality of the circumstances known to the officer would warrant a reasonable officer to believe that an arrestee was committing or was about to commit a crime. *Id.* at 714 (7th Cir. 2013). Probable cause is far short of a certainty and requires only a substantial chance of criminal activity. *U.S. v. Reichling*, 781 F.3d 883, 887 (7th Cir. 2015). Probable cause requires more than a hunch, but does not require a finding that it is more likely than not that the arrestee was engaged in criminal activity. *Abbott*, 705 F.3d at 714. An arrest is lawful, if supported by probable cause that the arrestee had committed any offense, regardless of the crime charged or the offense the officer believed the arrestee had committed. *U.S. v. Shields*, 789 F.3d 733, 745 (7th Cir. 2015); *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 N.3 (7th Cir. 2013).

In general, a person arrested pursuant to a facially valid arrest warrant cannot prevail on a Fourth Amendment claim, without a showing that the officer *knew* the warrant had issued without probable cause. *Williamson v. Curran*, 714 F.3d 432, 443 (7th Cir. 2013) (stating that in order to prevail on a Fourth Amendment claim when there is a warrant for a person's arrest, that person must prove not only that there was no probable cause to believe the person had committed a crime, but also that the arresting officer knew the arrest warrant issue without probable cause).

First, independent probable cause existed, as the State's Attorney's Office in Sangamon County already issued a warrant for Plaintiff's arrest based on the theft of the 1995 Mercury Grand Marquis before Investigator Sweeney entered the vehicle as stolen in LEADS. When Investigator Sweeney spoke with Plaintiff by telephone, he indicated that there was an active warrant out for his arrest. UMF 13; Ex. 3, at ¶ 8. While Investigator Sweeney determined it was appropriate to enter the vehicle in LEADS as stolen, she ran Plaintiff's information in LEADS which indicated that there was an active warrant for Plaintiff's arrest for the theft of the Mercury. UMF 15; Ex. 3, ¶ 10; Ex. 4 at 6. There is no evidence that Investigator Sweeney knew that this warrant was issued without probable cause; as such, Plaintiff's Fourth Amendment claim fails.

Additionally, the totality of the circumstances demonstrate that Investigator's Sweeney's conclusion that Plaintiff had likely committed a crime was reasonable. Lofton completed an official complaint with the Illinois Secretary of State, which indicated that she believed Plaintiff stole her vehicle on July 19, 2018. UMF, 1; Ex. 1. Investigator Sweeney began an investigation into the allegations, whereby Lofton provided ownership documents for the vehicle and a copy of the Springfield Police report for the stolen vehicle. UMF 4; Ex. 3 at ¶ 3; Ex. 4, at 5. Investigator Sweeney examined Lofton's title application and title and compared it to the title Plaintiff submitted, which allegedly contained Lofton's signature. Based on sixteen years of experience and

relevant training, Investigator Sweeney believed Lofton's signature to be forged on the title application Plaintiff submitted. UMF 7; Ex. 4, at 5. However, Investigator Sweeney took additional steps before indicating in LEADS that the vehicle was stolen.

One of the additional steps taken by Investigator Sweeney was to contact Plaintiff. When Investigator Sweeney spoke with Plaintiff, he initially agreed to meet with Investigator Sweeney, however, quickly back-tracked (after a call to Jason Sloman, Ex. 7 at 24-25) and refused to do so. UMF 12-13; Ex. 3, ¶¶ 7-8.  Investigator Sweeney gave the Plaintiff another opportunity to provide the appropriate ownership documentation or told the Plaintiff that if he refused to meet with her, she would enter the vehicle in LEADS as stolen. UMF 13; Ex. 3, at ¶ 8; Ex. 4 at 6; Ex. 7 at 24-25. Because Plaintiff demonstrated an unwillingness to comply with her investigation, coupled with Investigator Sweeney's reasonable belief that the title signature was forged based upon her training and experience, the circumstances raised a strong inference that criminal activity occurred. Investigator Sweeney's report that the vehicle was stolen was reasonable.

Despite this, Investigator Sweeney continued her investigation by giving Plaintiff another chance to demonstrate his ownership of the vehicle, yet he again refused to do so, and began yelling and using profanity. UMF 20 Ex. 3, ¶ 14; Ex. 4, at 6. Plaintiff's inability to comply with Investigator Sweeney's simple request to demonstrate ownership of the vehicle, when Lofton had provided proof as to her ownership of the vehicle, was more than sufficient to demonstrate that Plaintiff was engaged in criminal activity under the appropriate probable cause standard. This case can be analogized to *Tenorio v. Harris*, 370 F.Supp.3d 863, 871 (N.D. Ill. 2019), where probable cause for theft was established where the police officers received a report about stolen custom painted rims being in the arrestee's shop and when the officers arrived at arrestee's shop they discovered rims on display that matched the picture they had of the stolen rims. 370 F.Supp.3d

863, 871 (N.D. Ill. 2019). The fact that the arrestee had purchased the rims at a steep discount should have reasonably induced her to believe that the rims were stolen. *Id*. If probable cause existed in *Tenorio*, it must also exists here—where there is no evidence of any purchase of the vehicle by Plaintiff and where Plaintiff admits he did not have a title for the vehicle. *See also People v. Mason*, 213 Ill. App. 3d 163, 166 (3rd Dist. 1991) (finding probable cause where defendant was observed driving a car without authority and defendant and passengers acted nervous, and defendant could not give full name of man who had loaned them car).

In this case, Plaintiff was agitated and refused to provide proof of ownership of the Mercury. Lofton not only had proof of purchase, but she also applied for the Mercury's title on the date of purchase, whereas Plaintiff only applied for the title over a month after Lofton purchased the vehicle. These facts, coupled with the police report that the vehicle was stolen and the arrest warrant for Plaintiff issued by the Sangamon County State's Attorney's Office, clearly demonstrate probable cause to arrest.

## II.     QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIM

Qualified immunity bars Plaintiff's Fourth Amendment claim. Qualified immunity should be resolved at the earliest stage possible in the litigation. *Bleavins v. Bartels*, 326 F.3d 887, 891 (7th Cir. 2003).

Qualified immunity shields state officials from money damages unless a plaintiff pleads sufficient facts to plausibly show the official violated a statutory or constitutional right, and the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Through qualified immunity, a defendant's conduct may be insulated from liability even if the plaintiff's rights were violated. *See generally Wilson v. Layne*, 526 U.S. 603 (1999). To determine if a defendant is entitled to qualified immunity, the court must ask two

questions: (1) "whether the facts alleged show that the state actor violated a constitutional right," and (2) "whether that right was clearly established." *Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009). The Court has the discretion to decide the case based on the second question without addressing the first. *Dibble v. Quinn*, 793 F. 3d 803, 807 (2015).

To determine whether rights have been clearly established, the United States Supreme Court has suggested the right at issue must be clearly established at the national level by either Supreme Court precedent or, possibly, by a "'robust consensus of cases of persuasive authority' in the Courts of Appeals." *Taylor v. Barkes*, 135 S.Ct. 2042, 2044 (2015) (quoting *City & County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1779 (2015)). The Supreme Court did, however, "[a]ssum[e] for the sake of argument" that precedent from a circuit court decision could clearly establish a right, despite disagreement among the circuits. *Id.* at 2045; see also *Carroll v. Carmen*, 574 U.S. 13, 17 (2014) (per curiam). Neither an unpublished appellate opinion, nor a district court decision, can clearly establish the law. *Anderson v. Romero*, 72 F.3d 518, 525 (7th Cir. 1995).

The right at issue must be established, "not as a broad general proposition," but rather, in a particularized sense so that the contours of the right are clear to a reasonable official. *Dibble*, 793 F.3d at 808. The right must be defined with relation to the specific facts confronting the defendant. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). A right is "clearly established" only if it is defined so clearly and its contours are sufficiently clear that a reasonable official would know that what he is doing violates that right. *Carroll*, 574 U.S. at 16, *Dibble*, 793 F. 3d at 808. "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Carroll*, 574 U.S. at 16 (quoting *Al-Kidd*, 563 U.S. at 740).

Although qualified immunity is an objective standard, the inquiry is still "fact-specific." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "For qualified immunity to be surrendered,

preexisting law must dictate, that is, truly compel . . . the conclusion for every like-situated, reasonable government agent that what [he] is doing violates federal law in the circumstances." *Khuans v. Sch. Dist. 110*, 123 F. 3d 1010, 1019-20 (1997) (quoting *Lassiter v. Alabama A&M Univ.*, 28 F. 3d 1146, 1150 (11th Cir. 1994)) (alteration in original). "[I]t is not the simple existence of analogous case law that defeats the claim of qualified immunity; rather, these decisions must demonstrate that, at the time the defendants acted, it was certain that their conduct violated the law." *Doyle v. Camelot Care Ctrs., Inc.*, 305 F. 3d 603, 620 (7th Cir. 2002).

Here, at all relevant times, Investigator Sweeney acted in good faith in the execution of her duties and did not violate Plaintiff's clearly established constitutional rights. Investigator Sweeney took all reasonable steps during her investigation and justifiably concluded that the vehicle was stolen by Plaintiff based upon a totality of circumstances known to her at the time, including Plaintiff's outright refusal to demonstrate ownership of the vehicle. Based upon the Court's analysis in *Tenorio*, as discussed *supra*, it is clear that probable cause exists here where there is no evidence of any purchase of the vehicle by Plaintiff and where Plaintiff admits he did not have a title for the vehicle. And, even more, it was *Plaintiff* who alerted Investigator Sweeney that there was an arrest warrant for him issued by the Sangamon County State's Attorney's Office for theft of the vehicle.

Investigator Sweeney's actions were reasonable under the circumstances and far from violating clearly established law. *Abbott*, 705 F.3d at 723 ("[t]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law'") (quoting *Malley v. Briggs*, 475 U.S. at 341, 343 (1986)). While the concept of "probable cause" inherently allows for reasonable mistakes by officers, "qualified immunity affords an additional layer of protection for arresting officers." *Abbott*, 705 F.3d at 714.

An officer who arrests a subject without probable cause is protected by qualified immunity unless no reasonable officer could have mistakenly believed that probable cause existed for the arrest. *Id*.; *Wollen v. Gondert*, 192 F.3d 616, 625-26 (7th Cir. 1999); *Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015).

Even if the court concludes that probable cause is lacking under the specific facts of this case (and it is not), it was not unreasonable for Investigator Sweeney to conclude that the steps she took were sufficient to establish probable cause, and that probable cause independently existed based on the arrest warrant for Plaintiff. As such, qualified immunity bars Plaintiff's claims.

WHEREFORE, Defendant Ellen Sweeney respectfully request this Court grant her motion for summary judgment and enter judgment against the Plaintiff, dismissing this case entirely.

Respectfully submitted,

ELLEN SWEENEY,

Defendant,

KWAME RAOUL, Attorney General of the State of Illinois,

Attorney for Defendant,

By: ___/s/ Shannon Fruth_____
       Shannon Fruth, #6320635
       Assistant Attorney General
       500 South Second Street
       Springfield, Illinois 62701
       Phone: (217) 785-4555
       Fax: (217) 524-5091
       E-mail: sfruth@atg.state.il.us
                  gls@atg.state.il.us

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANDREW WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 3:19-cv-03181-SEM-TSH |
| | ) |
| JOSEPH FELCHNER and ELLEN | ) |
| SWEENEY | ) |
| | ) |
| Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2021, I caused a copy of the foregoing *Memorandum of Law in Support of Defendant Sweeney's Motion for Summary Judgment* to be electronically efiled with the Clerk of the Court, which will send electronic notice of same to the following:

Charles A. Pierce
Pierce Law Firm, P.C.
#3 Executive Woods Court, Suite 200
Belleville, IL 62226
cpierce@piercelawpc.com

and I certify that I mailed a copy of same by United States Postal Service, in an envelope properly addressed and fully prepaid, to the following:

Andrew White
1751 North Grand Avenue West, Lot #101
Springfield, IL 62702

Respectfully submitted,

By:   /s/ Shannon Fruth #63202635
Shannon Fruth, #6320635
Assistant Attorney General
500 South Second Street
Springfield, Illinois 62701
Phone: (217) 785-4555
Fax: (217) 524-5091
E-mail: sfruth@atg.state.il.us
gls@atg.state.il.us